UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SAMUEL DOORES, BENJAMIN McCULLOUGH and ALYNDA SEGARRA (on behalf of themselves and others similarly situated) | * * * * | CIVIL ACTION NO. 12-1499 |
| Plaintiffs, | * * | JUDGE MORGAN |
| vs. | * * | MAGISTRATE WILKINSON |
| ROBERT RESOURCES, LLC, a Louisiana Limited Liability Company | * * * | |
| Defendant. | * * | |

MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

Defendant, Robért Resources, LLC, hereby submits the following Memorandum in Support of its Motion for Summary Judgment:

INTRODUCTION

Plaintiffs filed this putative class action against Robért Resources, LLC alleging violations of the "Receipt Provision" of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 USC 1681c(g)(3) at three (3) New Orleans grocery stores doing business as "Robért Fresh Market" and/or "Lakeview Grocery." FACTA requires merchants to truncate all but the last five (5) digits of credit or debit card numbers, as well as the expiration date of the card, on customer receipts. *See* 15 USC 1681c(g)(1).

1

Plaintiff Samuel Doores alleges that a credit card receipt he received on May 18, 2012 at the "Robért Fresh Market" located at 8115 South Claiborne Avenue improperly included the expiration date of his credit card.[1]  Plaintiff Benjamin McCullough alleges that a similar incident occurred on June 9, 2012 at "Lakeview Grocery" located at 801 Harrison Avenue.[2]  Finally, Plaintiff Alynda Segarra alleges that she received a receipt on May 22, 2012 with the expiration date of her credit card disclosed at the "Robért Fresh Market" located at 135 Robert E. Lee Boulevard.[3]

Importantly, Plaintiffs do not claim that they have suffered any actual damages as a result of these alleged violations.  Knowing full well that statutory damages up to $1,000, as well as punitive damages and attorneys fees, are available under FACTA for *willful* violations of the statute, Plaintiffs have opportunistically alleged that the Defendant "knowingly, willfully, intentionally, and recklessly violated and continues to violate the FCRA and the Receipt Provision."[4]

As more fully demonstrated below, summary judgment is warranted even at this early stage[5] of the proceeding.  First, no amount of discovery is going to change the following essential facts, all of which establish as a matter of law that no "willful" violation of FACTA's Receipt Provision ever occurred at the three (3) grocery store locations made the subject of Plaintiffs' lawsuit:

---

[1] *See* Plaintiffs' Complaint, Rec. Doc. No. 1 at ¶¶ 39-40.

[2] *Id.* at ¶¶ 41-42.

[3] *Id.* at ¶¶ 43-44.

[4] *Id.* at ¶¶ 66, 68.

[5] Pursuant to Fed. R. Civ. Proc. 56(b), "a party may file a motion for summary judgment at *any time* until 30 days after the close of all discovery."  (emphasis added).

- All of the Point-Of-Sale ("POS") Systems at each location were brand new and purchased in 2007, 2008 and 2010, *i.e.* *after* FACTA's Receipt Provision went into effect;

- The POS Systems were recommended by, installed by and have been maintained by an independent third party called Networks POS Inc.;

- Networks POS Inc. assured the Chief Administrative Officer of the various companies at issue that the POS Systems would consist of the latest technology and would comply with all applicable laws and regulations related to POS systems at the time of their purchase and installation;

- Test receipts were printed by Networks POS Inc. before each location was opened to the public, which confirmed that the receipts that were to be provided to would-be customers in fact complied with all applicable laws and regulations, including FACTA;

- No one ever notified or complained to anyone associated with Robért Fresh Market or Lakeview Grocery that credit card expiration dates were being printed on customer receipts for credit card purchases;

- The POS Systems at each location do not print duplicate copies of customer receipts for the retailers' records; rather, a "stub" is printed, which does not contain the same information as the customers' receipt and all other information is stored and processed electronically;

- The *first* and *only* notice of a possible violation of FACTA was on June 13, 2012, when officials at Robért Fresh Market and Lakeview Grocery were advised that a lawsuit had been filed in federal court in New Orleans on June 12, 2012; and

- The very same day, on June 13, 2012, all credit card machines at each location were reprogrammed by Networks POS Inc. to correct any inadvertent violations of FACTA's Receipt Provision.

If presented with these facts, no reasonable juror could find that anyone associated with Robért Fresh Market or Lakeview Grocery *knowingly* violated FACTA's Receipt Provision. Nor could any reasonable juror conclude that anyone was *reckless*, *i.e.* engaged in conduct that created a risk of a violation of FACTA's Receipt Provision "substantially greater" than that which is necessary to make the conduct merely negligent (at best). See *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007).

Notwithstanding the above, at the very least, Robért Resources, LLC should be dismissed, with prejudice, because it is not a proper party defendant[6] to this action. Robért Resources, LLC has never "accept[ed] credit cards or debit cards for the transaction of business," which is a threshold requirement for any alleged violation of FACTA's Receipt Provision. Each of the three (3) locations at issue are owned and operated by three separate and distinct legal entities,[7] which are the _only_ entities that realize any revenues from the sale of any goods. Those entities have their own separate bank accounts where revenues generated by customer credit and debit cards are deposited. Robért Resources, LLC does not receive any economic benefit from the sale of any goods at any of the locations at issue. For this reason alone, summary judgment should be entered in favor of Robért Resources, LLC dismissing any and all claims against it, with prejudice.

In sum, prolonged and expensive discovery is not going to change the end result – dismissal of the Plaintiffs' Complaint. As such, Robért Resources, LLC prays that this Honorable Court denies the Plaintiffs leave to amend the Complaint to add any additional parties, enters summary judgment dismissing the Plaintiffs' Complaint in its entirety, and spares

---

[6] Plaintiffs ostensibly intend to amend their Complaint to add the proper Defendants to this action. Any such amendment, however, should be denied because it would be futile, as no "willful" violation of FACTA ever occurred for the reasons previously explained. Rule 15(a) of the Federal Rules of Civil Procedure provides that "leave to amend shall be freely given when justice so requires." *See also Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002). While Rule 15 imparts a "bias" in favor of granting leave to amend, such leave is not automatic. *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607-08 (5th Cir. 1996). Where a Plaintiff's proposed amendment would be futile, the Plaintiff's motion for leave to file an amended Complaint should be denied. *See, e.g. Multimin USA, Inc. v. Walco Int'l, Inc.*, 2007 U.S. Dist. LEXIS 29555, 6 (N.D. Tex. Apr. 19, 2007).

[7] M. Robert Enterprises, Inc. owns and operates the Robért Fresh Market located at 135 Robert E. Lee Boulevard; Claiborne Fresh Market LLC owns and operates the Robért Fresh Market located at 8115 South Claiborne Avenue; and Harrison Fresh Market LLC owns and operates Lakeview Grocery located at 801 Harrison Avenue.

Robért Resources, LLC (or any other potential Defendant) from this needless and costly litigation.

## LAW AND ARGUMENT

As more fully explained below, summary judgment dismissing the Plaintiff's Class Action Complaint is warranted because there is no genuine issue of material fact that no "knowing" or "reckless" violation of FACTA's Receipt Provision ever occurred at the three (3) locations made the subject of Plaintiffs' lawsuit.   At the very least, Robért Resources, LLC should be dismissed, with prejudice, because it is not a proper party defendant to this action.

## I.    SUMMARY JUDGMENT STANDARD

A party may file a motion for summary judgment at any time until 30 days after the close of all discovery.[8]  To that end, summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[9]

A party moving for summary judgment "must 'demonstrate the absence of a genuine issues of material fact,' but need not negate the elements of a nonmovant's case."[10]   If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits or other admissible evidence that specific facts exist over which there is a genuine issues for trial.[11]

---

[8] Fed. R. Civ. P. 56.

[9] Fed. R. Civ. P. 56(c); *N.Y. Life v. Travelers*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine*, 897 F.3d 755, 758.

[10] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (quoting *Celotex*, 477 U.S. at 323-25, 016 S. Ct. at 2552).

[11] *Wallace v. Texas Tech.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[12]  Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[13]  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[14]  Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[15]

Additionally, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."[16]  "If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate."[17]  Similarly, "[m]ere conclusory allegations are not proper summary judgment evidence, and they are insufficient to defeat….a motion for summary judgment."[18]

---

[12] *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047.

[13] *Wallace*, 80 F.3d at 1048 (quoting *Little); see also, S.W.S. Erections*, 72 F.3d 489, 494 (5ᵗʰ Cir. 1996).

[14] *McCallum Highlands*, 66 F. 3d 89, 92, *as revised on denial of rehearing*, 70 F.3d 26.

[15] *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-51.  *See generally, In re: TPT Transportation*, No. 95-215 (M.D. 12/13/01) (Polozola, J.).

[16] *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986).

[17] *Id*. at 249-50.

[18] *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1119 (5ᵗʰ Cir. 1992) (citations omitted).

## II.   NO REASONABLE JUROR COULD CONCLUDE THAT A "KNOWING" OR "RECKLESS" VIOLATION OF FACTA'S RECEIPT PROVISION EVER OCCURRED AT ANY OF THE LOCATIONS MADE THE SUBJECT OF PLAINTIFFS' LAWSUIT.

In 2003, Congress amended the FCRA by adding certain provisions to the FCRA and amending others.[19] The amending legislation is now commonly known as "FACTA." Among other things, FACTA prohibits merchants from printing certain credit and debit card information on receipts.  In particular, this "Receipt Provision" provides:

> (g) Truncation of credit card and debit card numbers
> ....
> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.[20]

FCRA, as amended by FACTA, imposes civil liability for violations of the law's provisions, including the Receipt Provision.  A negligent violation of the Receipt Provision entitles a plaintiff to recover actual damages suffered as a result of the violation.[21]  Statutory damages are not available for negligent violations.[22]  A willful violation of the Receipt Provision also entitles a plaintiff to recover actual damages.[23]  Unlike a negligent violation, however, which limits recoverable damages to actual damages, a willful violation also entitles a plaintiff to statutory damages, in lieu of actual damages, between $100 and $1,000.[24]  Statutory damages are available

---

[19] *See* Pub. L. No. 108-159,117 Stat. 1952 (2003)

[20] 15 U.S.C. § 1681c(g)(1)

[21] *Id*. at §1681c(a)(1)

[22] *Id*.

[23] *Id*. at §1681n(a) (1) (A)

[24] *Id*.

even if the plaintiff does not claim to have suffered actual damage as a result of the alleged willful violation.[25]   A willful violation also makes punitive damages, costs, and attorney's fees available to the plaintiff in addition to actual or statutory damages.[26]

In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007), the United States Supreme Court interpreted §1681n in the context of a dispute involving an auto insurer's alleged willful violation of §1681n(a).   The Supreme Court held that a violation of any FCRA provision, if in reckless disregard of the provision, is a willful violation for §1681n purposes. The *Safeco* Court's interpretation of §1681n has been held to apply in FACTA cases.[27]   Therefore, a violation of FACTA in reckless disregard of the law is a willful violation, and a plaintiff in such a case is entitled to seek statutory or actual damages, as well as punitive damages, costs, and attorney's fees.

**A.    Robért Fresh Market and Lakeview Grocery relied in good faith on an experienced independent contractor to install and maintain all POS Systems at the locations at issue.**

*i.*    **135 Robert E. Lee Boulevard**

M. Robert Enterprises, Inc. owns and operates the "Robért Fresh Market" located at 135 Robert E. Lee Boulevard.[28]   That grocery store sustained unprecedented damage as a result of Hurricane Katrina.[29]   The entire grocery store was destroyed and was, therefore, shut down and non-operational for over two (2) years following the Hurricane.  Everything, including all POS

---

[25] *See, e.g., Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1167-69 (D. Kan. 2008).

[26] 15 U.S.C. §1681n(a)(2)-(3)

[27] *See*, e.g., *Hedlund v. Hooters of Haus.*, No. 08-45, 2008 WL 2065852, at *3-4 (N.D. Tex. May 13, 2008) (collecting cases).

[28] *See* Affidavit of Lori Schmitt, attached as Exhibit "A" at ¶ 7.

[29] *See* Exhibit "A" at ¶ 19.

Systems, had to be replaced.  The entire store was rebuilt from the ground up, and that location re-opened on October 31, 2007.[30]

Prior to reopening in 2007, M. Robert Enterprises Inc. solicited proposals from several independent contractors that are in the business of selling POS systems, including all associated equipment and software.[31]  A proposal was provided by Networks POS Inc., which included a quote for the purchase, installation and on-going maintenance of all POS systems for the grocery store.[32]  At that time, Networks POS Inc. assured M. Robert Enterprises Inc. that all POS systems installed at 135 Robert E. Lee Boulevard would consist of the latest technology and would comply with all applicable laws and regulations related to POS systems, and M. Robert Enterprises Inc. relied on those assurances.[33]  In light of Networks POS Inc.'s expertise, all POS system equipment and software for the proposal was selected by Networks POS Inc. without any involvement from M. Robert Enterprises, Inc.[34]

M. Robert Enterprises, Inc. ultimately accepted Networks POS Inc.'s proposal for the purchase, installation and maintenance of all its new POS systems.[35]  The POS Systems were brand new and installed just prior to the reopening of the grocery store.[36]

---

[30] *See* Exhibit "A" at ¶ 19.

[31] *See* Affidavit of Rick Fernandez, attached hereto as Exhibit "B" at ¶ 4-5; *see also* Affidavit of Tim Rushing, attached as Exhibit "C" at ¶ 5.

[32] *See* Exhibit "B" at ¶ 5-7; see also Exhibit "C" at ¶ 5-6.

[33] *See* Exhibit "B" at ¶ 8; see also Exhibit "C" at ¶ 5-8.

[34] *See* Exhibit "B" at ¶ 8; see also Exhibit "C" at ¶ 8.

[35] *See* Exhibit "B" at ¶ 9; *see also* Exhibit "C" at ¶ 9.

[36] *See* Exhibit "B" at ¶ 11; *see also* Exhibit "C" at ¶ 11.

As part of the installation process, all POS systems were programmed by Networks POS Inc. to comply with FCRA and FACTA.[37]  Programming of the POS systems can only be done from a specific computer that is password protected and located in the corporate offices of M. Robert Enterprises, Inc.'s grocery store.[38]  Significantly, programming of the POS systems cannot be done from any equipment located on the sales floor, the check out lanes or the customer service counter.[39]

At the time of their installation and before the re-opening of the store, Networks POS Inc. specifically advised M. Robert Enterprises Inc. that all POS systems at 135 Robert E. Lee Boulevard had been properly programmed by it to comply with all applicable laws and regulations related to POS Systems.[40]  To further ensure compliance, Networks POS Inc. printed test receipts and confirmed that the receipts that were to be provided to would-be customers were compliant.[41]

Since installation in 2007 and continuing up until the present, Networks POS Inc. has performed the on-site equipment and software support/maintenance for all POS systems at 135 Robert E. Lee Boulevard.[42]

---

[37] *See* Exhibit "B" at ¶ 12; *see also* Exhibit "C" at ¶ 12.

[38] *See* Exhibit "C" at ¶ 13.

[39] *See* Exhibit "C" at ¶ 13.

[40] *See* Exhibit "B" at ¶ 12.

[41] *See* Exhibit "B" at ¶ 13; *see also* Exhibit "C" at ¶ 14.

[42] *See* Exhibit "B" at ¶ 14-15; *see also* Exhibit "C" at ¶ 14.

### ii.    8115 South Claiborne Avenue

The "Robért Fresh Market" located at 8115 South Claiborne Avenue is owned and operated by Claiborne Fresh Market LLC.[43]  The store was newly built from the ground up, and it opened on August 12, 2008.[44]

Claiborne Fresh Market LLC solicited and received a proposal from Networks POS Inc. for the purchase, installation and on-going maintenance of all POS systems for its grocery store.[45]  In connection with that proposal, Networks POS Inc. assured Claiborne Fresh Market LLC that all POS systems installed at 8115 South Claiborne Avenue would consist of the latest technology and would comply with all applicable laws and regulations related to POS systems, and Claiborne Fresh Market LLC relied on those assurances.[46]  In light of Networks POS Inc.'s expertise, all POS system equipment and software for the proposal was selected by Networks POS Inc. without any involvement from Claiborne Fresh Market LLC.[47]

In 2008 prior to its grand opening, Claiborne Fresh Market LLC accepted Networks POS Inc.'s proposal for the purchase, installation and maintenance of all its brand new POS systems.[48] As part of the installation process, all POS systems were programmed by Networks POS Inc. to comply with FCRA and FACTA.[49]  Programming of the POS systems can only be done from a

---

[43] *See* Exhibit "A" at ¶ 11.

[44] *See* Exhibit "A" at ¶ 21.

[45] *See* Exhibit "B" at ¶ 17; *see also* Exhibit "C" at ¶ 16.

[46] *See* Exhibit "B" at ¶ 19; *see also* Exhibit "C" at ¶ 18.

[47] *See* Exhibit "B" at ¶ 19; *see also* Exhibit "C" at ¶ 19.

[48] *See* Exhibit "B" at ¶ 20, 22; *see also* Exhibit "C" at ¶ 20, 22.

[49] *See* Exhibit "B" at ¶ 23; *see also* Exhibit "C" at ¶ 23.

specific computer that is password protected and located in the corporate offices of the grocery store.[50]  No programming of the POS systems can be done from any equipment located on the sales floor, the check out lanes or the customer service counter.[51]

After the POS System was installed, Networks POS Inc. printed test receipts and confirmed that the receipts that were to be provided to would-be customers were compliant with all laws.[52]  It also specifically told Claiborne Fresh Market LLC that all of the POS Systems had been properly programmed by it to comply with all applicable laws and regulations related to POS Systems.[53]

Since installation in 2008 and continuing up until the present, Networks POS Inc. has performed the on-site equipment and software support/maintenance for all POS systems at 8115 South Claiborne Avenue.[54]

### iii.    801 Harrison Avenue

"Lakeview Grocery" is owned and operated by Harrison Fresh Market LLC.[55]  That grocery store (located at 801 Harrison Avenue) was the former "Lakeview Fine Foods," which did not reopen after Hurricane Katrina.  Although the shell of the store was provided by the Landlord, Harrison Fresh Market LLC had to do a complete build out of the interior equipment and contents of its grocery store, which opened for the first time on October 28, 2010.[56]  As such,

---

[50] See Exhibit "C" at ¶ 24.

[51] See Exhibit "C" at ¶ 24.

[52] See Exhibit "B" at ¶ 24; see also Exhibit "C" at ¶ 25.

[53] See Exhibit "B" at ¶ 23.

[54] See Exhibit "B" at ¶ 25; see also Exhibit "C" at ¶ 26.

[55] See Exhibit "A" at ¶ 15.

[56] See Exhibit "A" ¶ 23.

everything in the store at that location was, including all POS Systems, was brand new at the time of its grand opening in 2010.[57]

Prior to opening, Harrison Fresh Market solicited and received a proposal from Networks POS Inc. for the purchase, installation and on-going maintenance of all POS systems for its grocery store.[58]  In connection with that proposal, Networks POS Inc. assured Harrison Fresh Market LLC that all POS systems installed at 801 Harrison Avenue would consist of the latest technology and would comply with all applicable laws and regulations related to POS systems, and Harrison Fresh Market LLC relied on those assurances.[59]  In light of Networks POS Inc.'s expertise, all POS system equipment and software for the proposal was selected by Networks POS Inc. without any involvement from Harrison Fresh Market LLC.[60]

Harrison Fresh Market LLC accepted Networks POS Inc.'s proposal for the purchase, installation and maintenance of all its brand new POS systems in 2010.[61]  All POS systems were programmed by Networks POS Inc. to comply with FCRA and FACTA prior to the store's grand opening.[62]  Programming of the POS systems can only be done from a specific computer that is password protected and located in the corporate offices of the grocery store.[63]  No programming

---

[57] See Exhibit "B" at ¶ 33; see also Exhibit "C" at ¶ 33.

[58] See Exhibit "B" at ¶ 29; see also Exhibit "C" at ¶ 27-28.

[59] See Exhibit "B" at ¶ 30; see also Exhibit "C" at ¶ 29.

[60] See Exhibit "B" at ¶ 30; see also Exhibit "C" at ¶ 30.

[61] See Exhibit "B" at ¶ 31; see also Exhibit "C" at ¶ 31.

[62] See Exhibit "B" at ¶ 34; see also Exhibit "C" at ¶ 34.

[63] See Exhibit "C" at ¶ 35.

of the POS systems can be done from any equipment located on the sales floor, the check out lanes or the customer service counter.[64]

Prior to the grand opening, Networks POS Inc. printed test receipts and confirmed that the receipts that were to be provided to would-be customers were compliant with all laws.[65]  It also specifically told Harrison Fresh Market LLC that all of the POS Systems had been properly programmed by it to comply with all applicable laws and regulations related to POS Systems.[66]

Since installation in 2010 and continuing up until the present, Networks POS Inc. has performed the on-site equipment and software support/maintenance for all POS systems at 801 Harrison Avenue.[67]

     **B.**    **No reasonable juror could conclude that anyone associated with Robért Fresh Market or Lakeview Grocery *knowingly* or *recklessly* violated FACTA's Receipt Provision.**

It was not until June 13, 2012, that M. Robert Enterprises Inc., Claiborne Fresh Market LLC and Harrison Fresh Market LLC discovered – for the first time – that there was a potential problem with how its customer receipts for credit card transactions were being printed.[68]  In fact, learning of the filing of Plaintiffs' Complaint on June 13, 2012 was the very first indication that FACTA violations may have occurred at 135 Robert E. Lee Boulevard, 8115 South Claiborne Avenue, and 801 Harrison Avenue.[69]  Up until that point, no customers had ever complained or

---

[64] *See* Exhibit "C" at ¶ 35.

[65] *See* Exhibit "B" at ¶ 35; *see also* Exhibit "C" at ¶ 36.

[66] *See* Exhibit "B" at ¶ 34.

[67] *See* Exhibit "B" at ¶ 36; *see also* Exhibit "C" at ¶37.

[68] *See* Exhibit "B" at ¶ 38, 44-53.

[69] *Id.*

reported to anyone at any of those locations that the expiration date for credit cards was being printed on receipts.[70]  Not even the named Plaintiffs in this lawsuit ever complained; instead, they chose to sit on this information and filed this class action lawsuit.[71]

Upon receiving a copy of Plaintiffs' Complaint on June 13, 2012, the Chief Administrative Officer for the various entities at issue immediately contacted Networks POS Inc. and advised it of the Plaintiffs' allegations in their lawsuit.[72]  It was necessary for Networks POS Inc. to fix the alleged problem because accessing and/or altering the customer receipt programming commands/protocols for the POS systems was beyond the expertise of anyone at M. Robert Enterprises, Inc., Claiborne Fresh Market LLC or Harrison Fresh Market LLC.[73] Again, Networks POS Inc. maintained all POS Systems at each of the three (3) locations at issue.[74]

Networks POS Inc. visited all three (3) locations right away on June 13, 2012.[75]  Its Vice President, Mr. Tim Rushing, discovered that the credit card machines were inexplicably printing the expiration date for credit cards on customer receipts.[76]  For reasons unknown, debit card receipts were unaffected and were being properly printed by the system.[77]  The very same day that the problem was discovered, on June 13, 2012, all POS Systems, including the credit card

---

[70] *Id.*

[71] *Id.*

[72] *See* Exhibit "B" at ¶ 39-40; *see also* Exhibit "C" at ¶ 38.

[73] *See* Exhibit "B" at ¶ 41.

[74] *See* Exhibit "B" at ¶ 14-15, 25, 36; *see also* Exhibit "C" at ¶ 15, 26, 37.

[75] *See* Exhibit "B" at ¶ 42; *see also* Exhibit "C" at ¶ 39.

[76] *See* Exhibit "B" at ¶ 42; *see also* Exhibit "C" at ¶ 39.

[77] *Id.*

machines, at 135 Robert E. Lee Boulevard, 8115 South Claiborne Avenue, and 801 Harrison Avenue had been inspected and reprogrammed by Networks POS Inc. to ensure that only the last four (4) digits of the credit or debit card numbers were being printed on customer receipts and no expiration date for either credit or debit cards was shown on the printed customer receipts.[78]

After the problem was corrected, Networks POS Inc. attempted to discover when or why the credit card machines at each location inexplicably began printing expiration dates for credit cards on customer receipts.  Unfortunately, there is no way to determine what may have caused the problem.

The POS systems and software do not allow one to view electronic images of past receipts that have been provided to customers, nor is the information that was disclosed on past receipts stored in any sort of electronic form.[79]  Furthermore, these particular POS systems do not print a duplicate hard copy for the retailer's records of the receipt that is given to the customer.[80]  Although the POS systems print a "stub" that is detached from the customer's receipt and is retained by the retailer, the information included on this stub is not the same information that is printed on a customer receipt, and the mere fact that certain information is included on the stub does not mean that the same information was included on the customer's receipt.[81]  Other than the stub, no other physical record of a sale is generated at the point of sale by the POS systems for the retailer.[82]  Rather, any and all other information regarding the

---

[78] *See* Exhibit "B" at ¶ 43; *see also* Exhibit "C" at ¶ 40.

[79] *See* Exhibit "C" at ¶46-47.

[80] *See* Exhibit "C" at ¶48.

[81] *See* Exhibit "C" at ¶49.

[82] *See* Exhibit "C" at ¶50.

transaction is stored and processed electronically, and there is no electronic record reflecting what information was printed on the physical receipt that was provided to the customer at the point of sale.[83]

Under this set of facts, no reasonable juror could find that anyone associated with Robért Fresh Market or Lakeview Grocery *knowingly* or *recklessly* violated FACTA's Receipt Provision.  Indeed, Courts have granted summary judgment in retailers' favors when faced with far more egregious circumstances.

For example, in *Najarian v. Charlotte Russe, Inc., et al.*, 2007 U.S. Dist. LEXIS 95606 (C.D. Cal. 2007), the Plaintiffs filed a complaint against a mall-based retailer of young women's apparel and accessories alleging willful violations of FACTA's Receipt Provision.  Like the Plaintiffs herein, the Plaintiffs in *Najarian* claimed that only the credit card number was truncated on their receipts with the expiration date being fully disclosed.

In response to the Defendant's motion for summary judgment, Plaintiffs argued that the Defendant had signed a document prepared by the Defendant's hardware and software vendor requesting truncation of both the credit card number and expiration date on customer receipts. The Defendant had also developed a "check-list" for all functions that the updated equipment had to perform, but the checklist did not include truncation of the expiration dates on receipts. The Plaintiffs also relied on a "technology script" sent by the Defendant to its store managers regarding how to add the credit card expiration date to customer receipts.  Notwithstanding the Plaintiffs' arguments, the Court granted summary judgment in the Defendant's favor:

> [W]hile the evidence may show actual knowledge of the law, it also shows no knowledge by Defendant that it was violating the law … Therefore, the Court finds that, while the evidence may, at best, show the Defendant was careless in

---

[83] *See* Exhibit "C" at ¶ 50.

failing to show the correct POS modification was implemented, it fails to show that Defendant knew about FACTA's expiration provision and consciously chose to ignore it.

***

Additionally, Defendant's evidence indicates a diligent and good faith attempt by Defendant to fulfill its statutory obligation.   Moreover, within one month of learning of FACTA's expiration requirement, Defendant implemented a fix for its registers so that all stores were printing compliant credit receipts by February 14, 2007.

More recently, in *Keller v. Macon County Greyhound Park, Inc.*, 2011 WL 1559555, (M.D. Ala. 2011), the Plaintiffs filed a class action lawsuit alleging willful violations of FACTA's Receipt Provision.  Like the present case, the Defendant in that case had purchased its POS Systems and software from an independent third party.  In October of 2007, the system crashed and was restored by the third party vendor.  Unbeknownst to the Defendant, after being restored, the credit card machines started printing all sixteen digits of customer's credit card numbers on receipts.  Although the Defendant's office manager was charged with collecting and sorting the merchant copies of receipts to add up the totals, she never noticed the disclosure of all sixteen numbers on the receipts.  Weeks went by until the Defendant eventually realized its receipts were not properly truncated after receiving a complaint from a customer.  The problem was fixed by the third party vendor that maintained the Defendant's POS Systems the same day the problem was discovered by the Defendant.

In granting summary judgment in the Defendant's favor on the issue of whether the FACTA violation was willful, the Court applied the Supreme Court's holding in *Safeco* to the facts and found that the Defendant's actions were neither knowing or reckless.  In finding that no "knowing" violation had occurred, the Court noted that, although the Defendant and the third party vendor disputed the chain of events which led to the Defendant actually becoming aware of

the violation, it was undisputed that knowledge of the violation was not acquired by the Defendant until December 5, 2007, *i.e.* the very same day the problem was fixed.

Furthermore, in finding no "reckless" violation of FACTA's Receipt Provision, the Court again relied on the Supreme Court's decision in *Safeco*, which instructs us that "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  Based on the facts presented, the *Keller* Court concluded that the Defendant had not engaged in "action" or "ran a risk" that made the possibility of resulting harm "so obvious that it should [have been] known" or that it "engaged in any form of reckless disregard of FACTA during this period."

The Court pointed to the fact that the software system had crashed and that a third party had installed and maintained the POS systems.  The Court also noted that upon the occurrence of both problems – the software crashing and the subsequent discovery that the receipts were being improperly printed for several weeks – the Defendant immediately contacted its third party vendor to service the POS System.  The Court also dismissed the notion that the Office Manager should have discovered the problem when she reviewed and sorted the merchant copies of customer receipts in light of the Defendant's reliance on the third party vendor to maintain its POS Systems:

> The fact that MCGP did not discover that it was printing FACTA-violative receipts for several weeks is the only possible basis for imputing recklessness to MCGP. Because the merchant copies of the receipts were collected and reviewed by Ms. Watson on a daily basis, and stored in her office for at least one month before being sent off-site, Ms. Watson is the most likely person to have been able to discern that the receipts contained FACTA violations. However, Ms. Watson testified that she only reviewed the receipts in order to add up the totals; she did not check for FACTA violations.  Based on Ms. Watson's review of the receipts

19

to check only their totals, Plaintiffs jump to the conclusion that "MCGP just chose to recklessly disregard the FACTA violations." (Pls.' Br. in Opposition 9.) Although unstated, the only way to bridge Plaintiffs' gap between Ms. Watson's review of the totals and MCGP's alleged recklessness regarding FACTA violations is to argue that MCGP was reckless in not training Ms. Watson to spot FACTA violations or in not directing Ms. Watson to review the receipts for possible FACTA violations. Even though this failure to erect a second line of defense (the Aloha software being the first line) against FACTA violations could *conceivably* amount to carelessness on the part of MCGP, Plaintiffs' brief and the record are wholly devoid of any coherent argument that it amounts to reckless disregard. *See Safeco Ins. Co. of Am.*, 551 U.S. at 69 (reckless disregard only shown if "the company ran a risk of violating the law *substantially greater* than the risk associated with [mere carelessness]")

(Emphasis in original).

The facts of the present case establish the non-existence of a willful violation of FACTA even more so than in *Najarian* and *Keller*.  For example, unlike in *Najarian*, the equipment at all three (3) locations was *brand new* and was purchased and installed *after* FACTA's effective date of December 4, 2006. Thus, the present case is not a situation where older, non-FACTA compliant equipment and software was being utilized and had to be upgraded to ensure compliance.  Consequently, unlike *Najarian*, there was no need for active involvement by M. Robert Enterprises Inc., Claiborne Fresh Market LLC or Harrison Fresh Market LLC in the form of "checklists" to ensure old equipment complied with newly enacted regulations, much less "scripts" directing its store managers on how to program the credit card machines.

To the contrary, it was reasonable for M. Robert Enterprises Inc., Claiborne Fresh Market LLC or Harrison Fresh Market LLC to assume that *brand new* equipment purchased *after* FACTA's effective date would perform properly, especially in light of Networks POS Inc.'s assurances and representations both before and after the purchase and installation of the various POS Systems that everything was programmed and performing properly.  Further underscoring this point is the fact that all maintenance at each location was performed by Networks POS Inc.

and *not* by  M. Robert Enterprises Inc., Claiborne Fresh Market LLC or Harrison Fresh Market LLC.

Moreover, in *Najarian*, the credit card machines were not brought into FACTA compliance for more than a month.  In the present instance, the credit card machines at issue were fixed and reprogrammed *the very same day* the alleged violations were discovered, *i.e.* on June 13, 2012.

Even in *Keller*, where there was an office manager that routinely reviewed receipts, the Court found no willful violation of FACTA.  In the present instance, no one could have reviewed customer receipts even if they wanted to because the POS Systems do not print duplicate copies of the customers' receipts.  Only a "stub" is printed, and the same information that is included on the stub is not the same as what is included on the receipts.  Thus, even if someone had reviewed the stubs, it would not have led anyone to believe that a FACTA violation was occurring.

In the final analysis, no amount of discovery is going to change the facts established herein.  The reality is that M. Robert Enterprises, Inc., Claiborne Fresh Market LLC and Harrison Fresh Market LLC reasonably relied on the experience and expertise of Networks POS Inc. to install, service and maintain all POS Systems at each location.  Receipt of a copy of the Plaintiffs' lawsuit on June 13, 2012 was the first and only notice of a FACTA violation, and the problem was fixed immediately, *i.e. that same day*.  At no time did M. Robert Enterprises Inc., Claiborne Fresh Market LLC and Harrison Fresh Market LLC intend to violate any applicable laws or regulations related to POS Systems, nor did they turn a blind eye to their legal obligations.[84]  To the contrary, the services of Networks POS Inc. were specifically engaged to guard against the very risk that a violation of any applicable laws or regulations would occur

---

[84] *See* Exhibit "B" at ¶ 55-57.

with respect to the POS systems, including the credit card machines.[85]   Under the present circumstances, there is no genuine issue of material fact that no "knowing" or "reckless" violation of FACTA's Receipt Provision ever occurred.   Consequently, summary judgment dismissing the Plaintiffs' Class Action Complaint, with prejudice, is warranted.

## III.   AT THE VERY LEAST, ALL CLAIMS AGAINST ROBÉRT RESOURCES, LLC SHOULD BE DISMISSED BECAUSE IT IS NOT A PROPER PARTY DEFENDANT TO THIS ACTION.

Plaintiffs' entire lawsuit is predicated upon the application of FACTA's Receipt Provision that is set forth in 15 USC 1681c(g)(1), which provides that  "*no person that accepts credit cards or debit cards for the transaction of business* shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."  (emphasis added).  Thus, it is axiomatic that a threshold requirement in any lawsuit alleging violations of FACTA's Receipt Provision is that the Defendant does, in fact, accept credit or debit cards for the transaction of business.

Robért Resources LLC does not, nor has it ever, accepted credit cards or debit cards for the transaction of business at 135 Robert E. Lee Boulevard, 8115 South Claiborne Avenue, or 801 Harrison Avenue.[86]  Robért Resources LLC does not own or operate any of the grocery stores at those locations, nor does it own any of the equipment or fixtures, including any POS Systems.[87]

---

[85] *See* Exhibit "B" at ¶ 55-57.

[86] *See* Exhibit "A."

[87] *Id.*

Robért Resources LLC does not realize any revenues from any sales of any products or services at any of the locations at issue.[88]   Rather, all payments from credit card and debit card transactions at 135 Robert E. Lee Boulevard are deposited into a separate bank account in the name of the entity that owns and operates that location, M. Robért Enterprises, Inc.[89]   Similarly, all revenues generated by credit and debit card transactions at 8115 South Claiborne Avenue are deposited into a separate bank account in the name of Claiborne Fresh Market LLC, which is the owner and operator of that location.[90]   Likewise, all credit and debit card payments are deposited into a separate account in the name of Harrison Fresh Market LLC for any such transactions at 801 Harrison Avenue.[91]

In sum, because Robért Resources LLC does not engage in any conduct that could ever give rise to a violation of FACTA's Receipt Provision, it is not a proper party defendant to this action.  As such, at the very least, summary judgment should be entered dismissing any and all claims against Robért Resources LLC, with prejudice.

---

[88] *Id.*

[89] *Id.*

[90] *Id.*

[91] *Id.*

## CONCLUSION

Based on the foregoing, Robért Resources, LLC prays that this Honorable Court denies the Plaintiffs leave to amend the Complaint to add any additional parties, enters summary judgment dismissing the Plaintiffs' Complaint in its entirety, and spares Robért Resources, LLC (or any other potential Defendant) from this needless and costly litigation.

Respectfully submitted,

**ADAMS AND REESE LLP**

s/      Gregory F. Rouchell
**WILLIAM B. GAUDET, #1374**
**LESLIE A. LANUSSE, # 14115**
**GREGORY F. ROUCHELL, #28746**
**KATIE F. WOLLFARTH, #31729**
4500 One Shell Square
New Orleans, LA 70139
Telephone:  (504) 581-3234
*Counsel for Defendant*
*Robert Resources, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record *via* Notice of Electronic Filing and/or by placing the same in the United States mail, postage prepaid and properly addressed, this 9th day of May, 2013.

s/      Gregory F. Rouchell
**GREGORY F. ROUCHELL**